UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE:<br><br>JAMES E. MCDUFFIE,<br>    DEBTOR | CHAPTER 13<br>CASE NO. 15-41226 HJB |

## MOTION TO APPROVE HOME AFFORDABLE MODIFICATION AGREEMENT

James E. McDuffie (the "Debtor") respectfully requests that the Court enter an Order approving his Home Affordable Modification Agreement with Ocwen Loan Servicing, LLC ("Ocwen"). In support, the Debtor represents as follows:

1.      Ocwen has agreed to enter into a permanent Home Affordable Modification Agreement (the "Agreement") with the Debtor.

2.      Under the terms of the Agreement, the Debtor's monthly payment, exclusive of taxes and insurance, will be lowered from $2,000.00 listed in Schedule I to $1,571.97.

3.      The interest rate on the loan will be reduced to 2% continuing through the term of the modified loan.

4.      A copy of the Agreement is attached hereto as **Exhibit A**.

5.      The Debtor needs this loan modification so that he can afford to retain his home, despite significant arrears.

6.      The Debtor will file an amended schedule J, and an amended Chapter 13 Plan to reflect the modification and change in payment.

WHEREFORE, James E. McDuffie respectfully requests that the Court enter an Order:

      a.      approving his Home Affordable Modification Agreement with Ocwen; and

      b.      granting such other relief as the Court deems just and proper.

              James E. McDuffie
              By his counsel,

DATED:  December 4, 2015      /s/ Herbert Weinberg
              Herbert Weinberg (BBO #550415)
              Rosenberg & Weinberg
              805 Turnpike Street
              North Andover, MA 01845
              (978) 683-2479
              hweinberg@jrhwlaw.com

*Exhibit A*

_____[Space Above This Line For Recording Data]_____

## LOAN MODIFICATION AGREEMENT
### (SHARED APPRECIATION)

PLEASE READ THIS ENTIRE DOCUMENT CAREFULLY BEFORE SIGNING. THIS AGREEMENT AMENDS YOUR LOAN IN A NUMBER OF IMPORTANT WAYS, INCLUDING REDUCING THE PRINCIPAL YOU OWE. IF YOUR PROPERTY LATER APPRECIATES IN VALUE, HOWEVER, YOU WILL BE REQUIRED TO PAY BACK 25% OF THAT APPRECIATION CAPPED AT THE AMOUNT OF THE PRINCIPAL FORGIVENESS, LESS YOUR COST OF ANY IMPROVEMENTS.

Borrower ("I" or "my"): James E Mcduffie

Servicer ("Servicer"): Ocwen Loan Servicing, LLC, NMLS # 1852

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 7/19/2004

Loan Number: 7143215452

Property Address: 113 Pleasant St Leominster, MA 01453 ("Property")

Servicer is offering this Loan Modification Agreement ("Agreement"), dated 8/6/2015, which modifies the terms of Borrower's home loan obligations as described below:

A.  the Mortgage, Deed of Trust, or Security Deed (the "Mortgage"), dated and recorded in the public records of Worcester County,

B.  the Note, of the same date and secured by the Mortgage (the "Note"), which covers the real and personal property described in the Mortgage located at 113 Pleasant St Leominster, MA 01453 (the "Property").

Pursuant to our mutual agreement to modify Borrower's Note and Mortgage (collectively the "Loan Documents") and in consideration of the promises, conditions and terms set forth below, the parties agree as follows:

1   Preconditions to Modification. I understand and agree that:

A   TIME IS OF THE ESSENCE under this Agreement.

B   The Loan Documents shall not be modified unless and until (i) I successfully complete the Trial Period (as defined below), (ii) the title insurance company insuring the lien of the Mortgage assures Servicer (or otherwise confirms to its satisfaction) that the Mortgage, as modified by this Agreement, continues to enjoy lien priority for the full amount of the Note and (iii) I receive from the Servicer a copy of this Agreement signed by the Servicer.

C   In order for the terms of this Agreement to become effective, I promise to make an initial payment of  $1,571.97 on or before 9/1/2015, and one (1) Trial Payment of principal and interest in the amount of  $1,571.97 to Servicer on or before 10/1/2015 ("Trial Period").

D   If I successfully complete the Trial Period, the "Loan Documents" will be modified pursuant to the terms of this Agreement. However, I acknowledge and agree that if I fail to send any payment on or before the respective due date, the Servicer's modification offer will be null and void and this Agreement will not become effective, and I further understand and acknowledge that the Servicer may commence or resume foreclosure or other activities related to the delinquency of my Loan under its original terms. Acceptance and application of late payments during the Trial Period will not constitute payment in accordance with Section 1.C. above.

2   The Modification. If all preconditions to the modification set forth in Section 1 of this Agreement have been met, then the Loan Documents shall automatically become modified on 11/1/2015 (the "Modification Effective Date"). I understand that if I have failed to make any payments as a precondition to this modification, this modification will not take effect and this Agreement will not be effective. If this Agreement becomes effective, the Loan Documents will be modified to include the following new terms which are acknowledged and agreed:

A   New Principal Balance: After successful completion of the Trial Period and other conditions set forth in Section 1 above, the new principal balance of my Note shall be  $359,433.43 (the "New Principal Balance"). This includes, to

368240
NMLS #: 1852
STP SAM7_v2.0

the extent permitted by law, all amounts and arrearages that are past due (including any unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. A portion of the New Principal Balance shall be deferred and may be forgiven as provided in Sections 2.B and 2.C of this Agreement.

B   Deferred Principal Balance:   $116,233.43 of the New Principal Balance shall be deferred (the "Deferred Principal Balance"). The Deferred Principal Balance shall be treated as a non-interest bearing principal forbearance and I am not obligated to pay interest or make monthly payments on any portion of it.

C   Forgiveness of Deferred Principal Balance: 100% of the Deferred Principal Balance is eligible for forgiveness in equal installments over three (3) years. Unless I default on my new payments to the extent that three (3) or more monthly payments become overdue and unpaid on the last day of any month, then the Servicer shall forgive one-third of the outstanding portion of my Deferred Principal Balance on each of the first, second and third anniversaries of the Modification Effective Date, respectively.   Forgiveness of any such amounts will not result in a new payment schedule.

D   Interest Bearing Principal Balance and Interest Rate: The portion of the New Principal Balance that is not deferred (i.e., New Principal Balance less Deferred Principal Balance) shall bear interest (the "Interest Bearing Principal Balance"). The Interest Bearing Principal Balance shall be   $243,200.00 and interest at the rate of 2.00000% shall begin to accrue thereon as of 10/1/2015. If a default rate of interest is permitted under the Loan Documents, then in the event of any default under the Loan Documents, as amended by this Agreement, the interest that will be due will be the rate set forth in this Section 2.D.

E   New Payment Date, Schedule and Amounts to be Repaid: The first new monthly payment on the Interest Bearing Principal Balance shall be due on 11/1/2015.

The payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 – Maturity | 2.00000% | 10/1/2015 | $736.47 | $835.50, adjusts annually after year 1 | $1,571.97, adjusts annually after year 1 | 11/1/2015 | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly.

I shall pay in full the Interest Bearing Principal Balance, all accrued and unpaid interest thereon and all other amounts due and owing by the earliest of: (i) the date on which my Note matures and is due and payable in full (the "Maturity Date"), (ii) a refinance or payoff of the entire Interest Bearing Principal Balance (a "Refinance Transaction"), or (iii) a sale or any transfer of the Property or a beneficial interest in the Property without the Servicer's consent that may require immediate payment in full under the terms of the Loan Documents (a "Sale Transaction"). I may also be required to pay the "Shared Appreciation Amount" as provided in Section 3 of this Agreement.

F   Pre-Payment of Note:  Provided I am not in default under the terms of this Agreement, in any pre-payment of the Note more than thirty (30) calendar days after the Modification Effective Date, the portion of the Deferred Principal Balance not yet forgiven pursuant to Section 2.C shall be deducted from the payoff amount.

G   The terms in this Section 2 shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, any provisions for an adjustable, step or simple interest rate, interest-only or other payment options, or any negative amortization features that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance. I WILL BE IN DEFAULT IF I DO NOT COMPLY WITH THE TERMS OF THE LOAN DOCUMENTS, AS MODIFIED BY THIS AGREEMENT.

**3** Shared Appreciation.

IF THE PROPERTY SECURING THE NOTE INCREASES IN VALUE AFTER THE MODIFICATION EFFECTIVE DATE, THERE MAY BE AN ADDITIONAL PAYMENT DUE, DEFINED IN THIS AGREEMENT AS THE "SHARED APPRECIATION AMOUNT". THE SHARED APPRECIATION AMOUNT RECOGNIZES CERTAIN IMPROVEMENTS I MAY MAKE TO THE PROPERTY IN THE FUTURE. IN NO EVENT SHALL THE SHARED APPRECIATION AMOUNT COLLECTED BE MORE THAN MY DEFERRED PRINCIPAL BALANCE ( $116,293.43).

A. In addition to the amounts I am obligated to pay pursuant to Section 2 of this Agreement, upon the earliest of (i) the Maturity Date, (ii) a Refinance Transaction, or (iii) a Sale Transaction, I shall also pay principal in an amount equal to 25% of the future increase in value, if any, of the Property as more fully described below. This additional payment of principal is referred to in this Agreement as the "Shared Appreciation Amount". The Shared Appreciation Amount shall be determined by the Servicer as follows. (Note, the terms "Valuation" and "Subsequent Capital Improvements" as used below are defined in Sections 3.B and 3.C of this Agreement).

    I    Maturity Date: The Shared Appreciation Amount, if any, at the Maturity Date shall be 25% of the difference between the Valuation of the Property as of such date and $243,200.00 (the Interest Bearing Principal Balance as of the Modification Effective Date) less (i) any credit determined by Servicer for Subsequent Capital Improvements and (ii) any amount of appreciation in excess of the Deferred Principal Balance.

    II    Refinance Transaction: The Shared Appreciation Amount, if any, in connection with a Refinance Transaction shall be 25% of the difference between the Valuation of the Property as of the closing date of the Refinance Transaction and $243,200.00 (the Interest Bearing Principal Balance as of the Modification Effective Date) less (i) any credit determined by Servicer for Subsequent Capital Improvements and (ii) any amount of appreciation in excess of the Deferred Principal Balance.

    III    Sale Transaction: If the Property is sold, the manner in which the Shared Appreciation Amount, if any, is determined by the Servicer depends on whether or not the sale is at "Arm's Length." If the purchaser is a party unrelated to the seller, then the Servicer will generally determine that the transaction is Arm's Length. If, however, the purchaser is related to the seller, or other circumstances indicate that the transaction was not Arm's Length, or if there is a transfer of the Property or any beneficial interest in the Property without the Servicer's consent that may require immediate payment in full under the terms of the Loan Documents, then the Servicer may determine that the Sale Transaction is not Arm's Length.

        a    If the Sale Transaction is Arm's Length, then the Shared Appreciation Amount, if any, will be equal to 25% of the difference between the gross sale price of the Property and $243,200.00 (the Interest Bearing Principal Balance of the Modification Effective Date), less (i) any credit determined by Servicer for Subsequent Capital Improvements and (ii) any amount of appreciation in excess of the Deferred Principal Balance.

        b    If the Sale Transaction is not Arm's Length, then the Shared Appreciation Amount, if any, will be equal to 25% of the difference between the Valuation of the Property (as defined in Section 3.B.) as of the date of the sale or transfer and $243,200.00 (the Interest Bearing Principal Balance as of the Modification Effective Date), less (i) any credit determined by Servicer for Subsequent Capital Improvements and (ii) any amount of appreciation in excess of the Deferred Principal Balance.

B. "Valuation" shall mean the dollar amount of the value of the Property determined by the Servicer under the following terms and conditions. In all of the circumstances enumerated in Section 3.A. other than an Arm's Length Sale Transaction, the Valuation shall include a Property appraisal from an independent licensed appraiser and, at Servicer's option, a third-party valuation based on such appraisal. I acknowledge and agree that such appraisal and third-party valuation (if any) are acceptable to me for assessing the value of the Property.

I also agree to provide Servicer with written notice of my intent to cause or permit a Refinance Transaction or Sale Transaction no more than sixty (60) days and not less than thirty (30) days in advance of said Refinance Transaction or Sale Transaction. At the time notice is provided, I agree to deliver documentation to the Servicer evidencing the gross amount of proceeds expected from or to be paid under such Refinance Transaction to enable Servicer to establish a Valuation of the Property and determine the Shared Appreciation Amount with respect to the Refinance Transaction. In the case of a Sales Transaction, I agree to provide the sales contract and any other information reasonably required by Servicer to enable Servicer to determine (i) whether or not it is an Arm's Length transaction and (ii) the Shared Appreciation Amount with respect to the Sales Transaction. I further agree and acknowledge that failure to provide the required notice of a Refinance Transaction or Sale Transaction may result in a delay in the Refinance Transaction or Sale Transaction and in my ability to pay off the Note and get the Mortgage released or reconveyed. I agree that

369240
NMLS #: 1652
STP SAM7_v2.0

Servicer will not be responsible for any loss, damage, expense, claim, proceeding, cause of action, encumbrance, order, charge, cost or reduction in value caused or contributed to, directly or indirectly, by my failure to give such written notice of a Refinance Transaction or Sale Transaction to Servicer.

C. "Subsequent Capital Improvements" that will qualify for credit under the Shared Appreciation Amount include only those improvements that are initiated and completed after the Modification Effective Date and are permanent structural improvements that have directly enhanced the value of the property. Repairs to the Property do not qualify as a Subsequent Capital Improvement. Servicer shall use the general guidelines adopted by the Internal Revenue Service to determine the difference between a Subsequent Capital Improvement and a repair. I agree to provide Servicer with the necessary support documentation, including, but not limited to, invoices and payment confirmation so that Servicer can determine whether any amounts for Subsequent Capital Improvements should be credited to the Shared Appreciation Amount. I acknowledge that failure to provide the necessary support documentation will result in no credit being provided for any Subsequent Capital Improvement I performed to the Property.

4    Additional Agreements. I agree to the following:

A    This Agreement modifies the Loan Documents to secure all advances, including all future advances or the like whether or not given pursuant to a commitment by the mortgagee or lender.

B    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Servicer has waived this requirement in writing.

C    That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Servicer.

D    That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

If this loan is currently escrowed for either taxes or insurance or both taxes and insurance, then Servicer will continue to collect the applicable escrow amount in addition to the monthly principal and interest payment. I agree to pay Servicer on the day payments are due under the Note and Mortgage as amended by this Agreement, until the loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Note and Mortgage; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Note and Mortgage; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Note and Mortgage, as the phrase "covenant and agreement" is used therein. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Note and Mortgage and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount. Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Note and Mortgage, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA") and (b) not to exceed the maximum amount a Servicer may require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I may agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage or deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage or deficiency in accordance with RESPA, but in no more than twelve (12) monthly payments.

Upon payment in full of all sums secured by the Note and Mortgage and this Agreement, Servicer shall promptly refund to me any Funds held by Servicer.

E    That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F    That, as of the Modification Effective Date, I understand that the Servicer will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan.  Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

G    That, I will cooperate fully with Servicer in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Servicer's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Servicer does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

H    That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature.  At Servicer's option, this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.  I agree to deliver any such corrective documents within ten (10) days after I receive the Servicer's written request for such replacement.

I    That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

J    Severability: Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

K    In the case of multiple Borrowers, references to "I" and "my" throughout this Agreement shall mean "we" and "our", respectively.

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here →  _James E Mcduffie_      20 , AUG, 2015 Date

Sign Here → _____      _____/_____/_____ Date

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave this section blank and return it with the rest of the agreement.

Sign Here → _____      _____/_____/_____ Date

Sign Here → _____      _____/_____/_____ Date

Servicer _____   BY _Felicia Perry_
                                    Felicia Perry
         NOV 0 6 2015              Authorized Officer
_____

Date
If applicable: _____

Mortgage Electronic Registration Systems, Inc. – Nominee for Servicer

Loan Number  7143215452

### BALLOON DISCLOSURE

Borrower(s) ("I" or "me"):  James E Mcduffie

Servicer ("Servicer"):  *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 7/19/2004

Loan Number:              7143215452

Property Address:         113 Pleasant St Leominster, MA 01453

THIS BALLOON DISCLOSURE is made this 6th day of AUGUST, 2015, and is incorporated into and shall be deemed to supplement the Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s).  The Agreement contains a balloon feature that requires the Borrower(s) to make an additional payment based on the future appreciation of the Property. This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. A single balloon payment will be due and payable in full on 8/1/2019, provided that all payments are made in accordance with the loan terms and the interest rate does not change for the entire loan term.  The balloon payment may vary depending on the Shared Appreciation Amount as determined at the time of maturity.

Neither Ocwen Loan Servicing, LLC nor any lender to which this loan is transferred or assigned is under any obligation to finance the amount of the balloon payment.  In addition, the value of the real estate securing this loan may change during the term of the loan.  On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below.

_____          20 AUG 2015
Borrower                                    Date

_____          _____
Borrower                                    Date

# SHARED APPRECIATION DISCLOSURE

**Important disclosure about the agreement in which you pay a part of any future increase in the value of your home.  Please read carefully.**

Borrower(s) ("I" or "me"):  James E Mcduffie

Servicer ("Servicer"):  *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 7/19/2004

Loan Number: 7143215452

Property Address: 113 Pleasant St Leominster, MA 01453 ("Property")

THIS SHARED APPRECIATION DISCLOSURE is made this 5th day of AUGUST, 2015, and is incorporated into and shall be deemed to supplement the Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s).  The Agreement contains a shared appreciation feature that requires the Borrower(s) to make an additional payment based on the future appreciation of the Property.

### SHARED APPRECIATION AMOUNT

I agree to share in any future appreciation of the market value of the Property that occurs between the date of modification and the date the Property is sold, refinanced or the Loan reaches maturity.  The Shared Appreciation Amount recognizes certain improvements made to the property after the Modification Effective Date.  In no event shall the Shared Appreciation Amount collected be more than the Deferred Principal Balance.  The following are examples of how such shared appreciation may be calculated.

### EXAMPLES

This share appreciation modification is available to borrower(s) whose unpaid principal balance exceeds the market value of their Property.  Under the shared appreciation modification, the total debt amount owed would be reduced, resulting in a new principal balance made up of two parts:  (i) an Interest Bearing Principal Balance that has been adjusted based upon the market value at the time of modification and (ii) a Deferred Principal Balance that does not bear interest and is eligible to be forgiven over a three (3) year period.

For purposes of this disclosure, the scenarios below are based on the following modification terms:

- A market value of $100,000 at the time of modification.
- A New Principal Balance of $130,000.
- An Interest Bearing Principal Balance of $100,000.
- A Deferred Principal Balance of $30,000.

After four (4) years of making each monthly payment on time, I decide to sell the Property and receive an Arm's Length offer to purchase from an unrelated third party in the amount of:

1   $100,000, EQUIVALENT TO NO APPRECIATION AFTER THE MODIFICATION
Since the market value of the Property remained the same from the date of modification to the date I decided to sell the Property, I would owe a Shared Appreciation Amount of $0.

   - All $30,000 of Deferred Principal Balance would have been already forgiven.
   - The Shared Appreciation Amount would be equal to 25% of $0 in appreciation (25% x $0 = $0) or $0.
   - Therefore, I would not be required to pay anything as the Shared Appreciation Amount.

2   $120,000, EQUIVALENT TO AN APPRECIATION OF TWENTY PERCENT (20%) AFTER THE MODIFICATION
Since the market value of the Property increased from $100,000 to $120,000 from the date of modification to the date I decided to sell the Property, I would owe a total Shared Appreciation Amount of $5,000.

   - All $30,000 of Deferred Principal Balance would have been already forgiven.
   - The Shared Appreciation Amount would be equal to 25% of the $20,000 in total appreciation (($120,000 - $100,000) x 25% = $5,000) or $5,000.
   - Since the Shared Appreciation Amount of $5,000 is less than the Deferred Principal Balance ($30,000), I would be required to pay $5,000 as the Shared Appreciation Amount.

- I would receive the remaining 75% of the appreciation or $15,000 ($20,000 - $5,000 = $15,000).

3  **$120,000, EQUIVALENT TO AN APPRECIATION OF TWENTY PERCENT (20%) AFTER THE MODIFICATION (WITH A SUBSEQUENT CAPITAL IMPROVEMENT MADE TO THE PROPERTY.)**

Similar to example number 2 above, the market value of the Property increased from $100,000 to $120,000 from the date of modification to the date I decided to sell the Property. However, in this instance, I have also produced evidence of a $5,000 Subsequent Capital Improvement made to the property after the modification effective date. As a result, I would receive a credit for the Subsequent Capital Improvement and owe a total Shared Appreciation Amount of $3,750.

- All $30,000 of Deferred Principal Balance would have been already forgiven.
- The Shared Appreciation Amount would be equal to 25% of the $15,000 in appreciation achieved after deduction of the $5,000 for the Subsequent Capital Improvement (($120,000 - $100,000 - $5,000) x 25% = $3,750) or $3,750.
- Since the Shared Appreciation Amount of $3,750 is _less than_ the Deferred Principal Balance ($30,000), I would be required to pay $3,750 as the Shared Appreciation Amount.
- I would receive a full credit of $5,000 for the Subsequent Capital Improvement _plus_ the remaining 75% of the appreciation or $11,250 ($15,000 - $3,750 = $11,250).

4  **$225,000, EQUIVALENT TO AN APPRECIATION OF ONE HUNDRED AND TWENTY FIVE PERCENT (125%) AFTER THE MODIFICATION**

Since the market value of the Property increased from $100,000 to $225,000 from the date of modification to the date I decided to sell the Property, I would owe a total Shared Appreciation Amount of $30,000.

- All $30,000 of Deferred Principal Balance would have been already forgiven.
- The Shared Appreciation Amount would be equal to 25% of the $125,000 in appreciation (($225,000 - $100,000) x 25% = $31,250) or $31,250.
- Since the Shared Appreciation Amount of $31,250 is _greater than_ the Deferred Principal Balance ($30,000), I would only be required to pay $30,000 as the Shared Appreciation Amount.
- I would receive the remaining 75% of the appreciation ($93,750) _plus_ an additional $1,250 ($31,250 - $30,000) because the amount of appreciation actually due cannot exceed the total Deferred Principal Balance of $30,000.

**OTHER CONSIDERATIONS**

1  Borrower(s) should seek independent counseling from a lawyer, a HUD-certified mortgage counselor and/or a tax advisor regarding (A) the trade-off between a current reduction in the size of the mortgage versus the promise to give up part of the future appreciation of your Property, and (B) the tax consequences of the principal forgiveness and shared appreciation features of the Agreement.

2  The U.S. Department of Housing and Urban Development list of approved housing counselors may be found at: www.hud.gov/offices/hsg/sfh/hcc/fc/

3  The Agreement could have an effect on future refinancing of the Property. If I refinance or pay off the Note after entering into this Agreement, I will be required to pay part of the appreciation in the value of the Property as described in the Agreement.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

_____        20 AUG 2015
Borrower                                Date


_____        _____
Borrower                                Date

369240
NMLS #: 1852
STP SAMT_v2.0

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:                                    )          CHAPTER 13
                                          )          CASE NO. 15-41226 HJB
JAMES E. MCDUFFIE,                        )
          DEBTOR                          )
                                          )

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the Motion to Approve Loan Modification and
Loan Modification was this day sent, by mailing, first class mail, postage prepaid, or
through the Court's ECF systems to the following:


James E. McDuffie                    Denise M. Pappalardo
113 Pleasant Street                  Chapter 13 Trustee
Leominster, MA 01453                 P.O. Box 16607
                                     Worcester, MA 01601

U.S. Trustee's Office                Ocwen Loan Servicing
U.S. Bankruptcy Court                Bankruptcy Loss Mitigation
446 Main Street, 14th Floor          3451 Hammond Avenue
Worcester, MA 01608                  Waterloo, IA 50702

                                     Ronald M. Faris, CEO
                                     Ocwen Loan Servicing
                                     1661 Worthington Road, Suite 100
                                     West Palm Beach, FL 33409

                                     Timothy Hayes, General Counsel
                                     Ocwen Loan Servicing
                                     1661 Worthington Road, Suite 100
                                     West Palm Beach, FL 33409

Signed under the penalties of perjury this 4th day of December, 2015.

/s/ Herbert Weinberg
Herbert Weinberg (BBO #550415)
Rosenberg & Weinberg
805 Turnpike Street
North Andover, MA 01845
(978) 683-24769
hweinberg@jrhwlaw.com

4